[Civ. No. 3149.   Second Appellate District, Division One.—February 5, 1920.]

SOUTHWEST LAND COMPANY OF LOS ANGELES (a Corporation), Respondent, v. COUNTY OF LOS ANGELES, Appellant.

[1] TAXATION—ERROR IN VALUATION—RIGHT TO CORRECT—CONSTRUCTION OF SECTION 1881, POLITICAL CODE—EVIDENCE.—Under section 3881 of the Political Code, as it existed prior to its amendment in 1917, a board of supervisors had no authority after the adjournment of the board of equalization to permit the assessor to change the assessed value of property on the assessment-roll, the application therefor being based upon an alleged clerical error occurring in entering the assessed value of the property in the assessor's map-book, where such alleged error was not ascertainable from the assessor's books or lists but could be proven only by oral testimony.

[2] ID. — PROCEEDING TO CORRECT ERROR — VALUATION OF PREVIOUS YEAR NOT ADMISSIBLE.—In a proceeding under section 3881 of the Political Code, prior to its amendment in 1917, to correct an alleged clerical error occurring in entering the assessed value of

the property in the assessor's map-book, the valuation shown by the assessor's books as against the property for a previous year was not receivable as evidence that the assessor committed a clerical error in assessing that property at a different amount in the year in question.

[3] Id.—Recovery of Taxes Paid Under Protest—Interest not Allowable.—In an action to recover taxes paid under protest, the allowance of interest from the date of payment of the tax to the date of entry of the judgment is erroneous.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank G. Finlayson, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

A. J. Hill, County Counsel, Robert B. Murphey, Assistant County Counsel, Hugh Gordon and Gordon Boller, Deputies County Counsel, for Appellant.

Fredericks & Hanna for Respondent.

CONREY, P. J.—Action to recover the sum of $1,467 paid under protest to satisfy a purported tax levy for the year 1915 against real property of the plaintiff. Judgment for plaintiff, from which the defendant appeals.

On the original tax-roll, duly verified by the assessor, the property was valued at $10,280, the tax thereon being a stated amount, which was paid and is not included in the amount sued for in this action. On the twenty-second day of September, 1915, which was about two months after adjournment of the board of equalization, the county assessor of Los Angeles County filed an application with the board of supervisors requesting permission to make an addition to or change in the assessment-roll so as to change the assessment of said property, exclusive of improvements, from $10,280 to $100,280. This application was in writing, approved by the district attorney, and recited that the reason for making said change was because of a clerical error occurring in entering the assessed value of the property in the assessor's map-book. Pursuant to a hearing upon that application, the board of supervisors made an order purporting to authorize the assessor to make the proposed change in the assessment. Thereafter, pursuant to such

order, the assessor added the sum of ninety thousand dollars valuation to the assessment-roll against said property, which authorization was filed in the office of the auditor of Los Angeles County. The additional tax thereafter paid by the plaintiff under protest is the amount sought to be recovered herein.

Section 3658 of the Political Code provides for maps and plat-books to be kept by the assessor, which are required to show the private lands owned or claimed in the county, and are required to be in forms prescribed by the state board of equalization. These books are in form such that the right-hand page of the map-book shows a map of the land within certain arbitrary districts. The left-hand page contains data descriptive of the lands shown on the opposite page. This information is written in by the assessor and is the basis of the assessment-roll. In practice the valuations and descriptions of the assessment-roll are copied from the descriptive pages of the assessor's map-book. In the assessor's map-book, volume 205, while the same was in course of preparation for the year 1915, on pages 23, 24, and 25, there was placed a map according to a subdivision of the property which had been used in previous years, together with the appropriate descriptive matter. Thereafter the assessor's attention was called to the fact that a new map of the land had been filed, showing it entirely as acreage. Thereupon the assessor made a new map on page 55 of the same book and noted on the page of the old map a reference to page 55 as follows: ''For 1915 see pg. 55, Tr. No. 2783,'' which was the number of the tract. The assessment as actually made is shown on page 55, where, under the head, ''Value, 1915,'' the valuation entry of $10,280 was placed by the assessor's clerk and the assessment so made was included in the assessment-roll as verified by the assessor and approved by the board of equalization.

At the trial of this action it was shown by the testimony of the assessor that before the entry of $10,280 had been made he had decided to value the property at $100,280, and as indicating that fact had placed in pencil on page 25 (but not under any column or place for regular assessment) the figures 100,280. He said: ''I made the figures for him to place on the page where the new tract is as the valuation

of that new tract. Q. For whom to place? A. For the clerk who called my attention to this matter.'' Thereafter the clerk made the valuation entry $10,280 in the proper column and page, and this was the apparent assessment down to the time when the purported change was made by order of the board of supervisors pursuant to the application filed on the twenty-second day of September, 1915.

[1] The validity of this assessment depends upon the construction to be given to section 3881 of the Political Code. That section is contained in chapter 11 of title IX of part III of that code. Title IX contains the provisions governing assessments, levies, and collections of taxes, chapter 11 being entitled, ''Miscellaneous Provisions.'' Section 3881 carries the subhead, ''Clerical Errors in Assessment-books; Corrections.'' It is provided therein that ''Clerical omissions or errors or defects in descriptions or defects in form in any assessment-book, when it can be ascertained from the assessment-book or from the assessor's maps or block-books, or from the list furnished by the property owner, what was intended to be assessed, or what should have been assessed, may, with the written consent of the district attorney, be supplied or corrected by the assessor at any time after the assessment was made, prior to the sale for delinquent taxes,'' with provisos relating to notice, etc.

Appellant contends that the trial court was in error in overruling defendant's objection to the taking of testimony on the ground that the complaint did not state facts sufficient to constitute a cause of action, and also denying defendant's motion for a nonsuit; that for the same reason the decision should be reversed on the ground that the findings do not support the judgment; and that the evidence clearly shows that there was a ''clerical error'' in the assessment, the correction of which was authorized by section 3881 of the Political Code, and for that reason the findings are not supported by the evidence. Counsel for appellant say that the effect of section 3881 is to extend the time for assessment; that the powers given thereunder are necessarily broad, and extend over all cases where the identity of the property to be assessed is definitely shown in the assessment-book or in the assessor's maps or block-books, or list furnished by the property owner; that since in this case the property was correctly described in the books, it follows

that any error in fact made in entering the valuation as the assessor intended to state such valuation may be corrected by proceedings under section 3881. They refer us to *County of San Luis Obispo* v. *White,* 91 Cal. 432, [24 Pac. 864, 27 Pac. 756], where the supreme court sustained the validity of a change in assessment made pursuant to section 3881 of the Political Code, which at that time provided that ''Omissions, errors or defects in form in any original or duplicate assessment-book, when it can be determined therefrom what was intended, may, with the written consent of the district attorney, be supplied or corrected by the assessor at any time prior to the sale for delinquent taxes, and after the original assessment was made. . . . '' In that case it was shown that the total tax, which included a special road tax, appeared on the assessment-roll in column headed ''road tax,'' but did not appear in the column headed ''total tax.'' It was held that since on the roll ''it was clear what the omitted total tax was,'' the omission to enter that amount under the heading ''total tax'' might be supplied, by proceeding in the manner provided by section 3881. In the case at bar the fact that the assessor had intended to value plaintiff's property at any sum other than $10,280 did not appear from the assessment-book or from the assessor's maps or block-books, and no contention is made that such fact appeared from the list furnished by the property owner. The figures 100,280 in pencil on one side of the page 25 are no part of the tax record, and are not evidence of the alleged error sought to be corrected in the proceeding attempting to change the valuation stated in that record. The validity of that change cannot be upheld unless the act of the clerk was a clerical error, nor unless the board was authorized to go beyond the data which appeared on the books, and take direct testimony proving that the assessor instructed his clerk to make an entry showing a valuation different from the valuation as actually entered. But this would be an assumption of authority in excess of the limitation prescribed by section 3881. The power of assessment, in matters involving discretion as to the amount thereof, was exhausted when the board of equalization finally adjourned. The extension of authority over the making of the assessment, after that date, was given by section 3881

for narrowly defined purposes, and was expressly limited. Appellant insists, that since "what was intended to be assessed, or what should have been assessed," appeared on the books, by correct description of the property, therefore the board of supervisors had power to ascertain other facts establishing error, by taking evidence outside the books, and so proving that the assessment as made on the books did not conform to the true intention of the assessor as verbally expressed by him to his clerk before the entry was made. Prior to 1901, the terms of section 3881 were as found in the foregoing quotation from *County of San Luis Obispo* v. *White,* 91 Cal. 432, [24 Pac. 864, 27 Pac. 756]. Ever since 1901 (until the amendment found in Stats. 1917, page 968, not applicable to this case) the corresponding terms of the section were as first stated herein; that is, instead of "Omissions, errors, or defects in form in any original or duplicate assessment-book, when it can be determined therefrom what was intended," the section as in force in the year 1915 covered only "*clerical* omissions or errors or defects *in description* or defects in form in any assessment-book, when it can be ascertained from the assessment-book or from the assessor's maps or block-books, *what was intended to be assessed,*" etc.; to be supplied or corrected in the manner stated. As expressed by the amendment, the manifest intention of the legislature was to more narrowly define the terms of the grant of power, so that after equalization no changes might be made except those of a purely clerical or formal nature, relating to matters of description or form, and then not unless the fact that there was an error could be ascertained from the sources named. If this was not the legislative intention, it is difficult to see that the amendment had any intelligible purpose.

[2]   Counsel for appellant in their brief admit that "perhaps the true measure of the authority to make changes in the assessment under Political Code, section 3881, is found in the plain records of the map-book as they appeared to the deputy assessor, unaided by oral statements or informal pencil memoranda." On this assumption they then rely upon the map-book and the assessment of the same property, whereby it was indicated that the property was valued and assessed in 1914 for more than ten times the amount placed against it in 1915. We are convinced, however, that the

valuation shown by the books as against property for the year 1914 or for any previous year is not receivable as evidence that the assessor committed a clerical error in assessing that property at a different amount in the year 1915. The assessment for each year is separately made, and the record thereof is, in legal intent, likewise separate and complete.

[3] In addition to the sum of $1,467, the judgment awarded to plaintiff interest thereon from date of payment of the tax to date of entry of the judgment. This was erroneously allowed: (*Spencer* v. *City of Los Angeles*, 180 Cal. 103, [179 Pac. 163, 168].) It is ordered that the judgment be modified by striking therefrom said allowance of interest. As thus modified, the judgment is affirmed.

Shaw, J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 5, 1920.

All the Justices concurred.