Filed 7/11/22 (unmodified opinion attached)

**CERTIFIED FOR PARTIAL PUBLICATION**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| XPO LOGISTICS FREIGHT, INC.,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>v.<br><br>HAYWARD PROPERTY, LLC et al.,<br><br>    Defendants, Cross-complainants and Appellants. | A157687<br><br>(Alameda County Super. Ct. Nos. HG16841187, RG16843893) |
| XPO LOGISTICS FREIGHT, INC.,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>v.<br><br>HAYWARD PROPERTY, LLC et al.,<br><br>    Defendants, Cross-complainants and Respondents. | A158291, A159299<br><br>(Alameda County Super. Ct. Nos. HG16841187, RG16843893)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |

THE COURT:

The opinion filed herein on June 17, 2022 is modified as follows:

1. On page 8, lines 9–10, after the words "The correctory deed has not been recorded," delete the comma and the words "allegedly by inadvertence."

2. On page 12, line 4, at the end of the parenthetical, after "69 Cal.2d 33, 37" add "(*PG&E*)."

1

3. On page 13, line 10, add the following as footnote 7 at the end of the sentence concluding with the words "as a matter of law" (and renumber all subsequent footnotes accordingly):

> [7] Hayward contends that, under the common law rule articulated in *PG&E*, *supra,* 69 Cal.2d 33, as applied in *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 114–115, a court may never take judicial notice of the proper interpretation of a contract at the pleadings stage. However, the rule of *PG&E* does not categorically bar a court from determining the correct interpretation of a contract at the pleadings stage. (*George v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 1112, 1122 [court may, after conditionally accepting and considering proffered parol evidence, determine that "the parol evidence alleged must be disregarded because, for whatever reason, the contract is not reasonably susceptible of the interpretation . . . alleged"].) Revenue and Taxation Code sections 327 and 11911.1, read together, mandate a specific rule for the interpretation of deeds and other conveyances, overriding any general common law rule to the contrary.

4. On page 17, line 3, add the following as footnote 10 at the end of the sentence concluding "that is all that the judgment correctly determines" (and renumber all subsequent footnotes accordingly) :

> [10] Hayward contends that the trial court erred in granting judgment on the pleadings without adjudicating its affirmative defenses or granting it leave to amend its cross-complaint. However, Hayward has not identified any proposed new factual allegations or affirmative defense that could possibly defeat XPO's right to a declaratory judgment.

5. On page 19, lines 2–3, replace the words "Hayward's own deed (i.e., the 2003 correctory deed, which incorporates the 2002 bankruptcy legal description)" with the words "the document on which Hayward itself relies (i.e., the 2002 bankruptcy legal description)."

There is no change in the judgment.

The petition for rehearing is denied.

Dated: July 11, 2022          POLLAK, P. J.

2

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judges: | Honorable Ioana Petrou<br>Honorable Evelio Grillo |
| Counsel for Plaintiff, Cross-defendant and Appellant: | STUART KANE LLP<br>Donald J. Hamman<br><br>McALPINE PC<br>Douglas W. Eyre<br>Mark L. McAlpine<br><br>BUCHALTER, APC<br>Glenn P. Zwang<br>Alexandra Grayner |
| Counsel for Defendants, Cross-complainants and Appellants: | GREENBERG TRAURIG, LLP<br>Eric V. Rowen<br>Scott D. Bertzyk |

Filed 6/17/22 (unmodified opinion)

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| XPO LOGISTICS FREIGHT, INC.,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>v.<br><br>HAYWARD PROPERTY, LLC, et al.,<br><br>    Defendants, Cross-complainants and Appellants. | A157687<br><br>(Alameda County Super. Ct. Nos. HG16841187, RG16843893) |
| XPO LOGISTICS FREIGHT, INC.,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>v.<br><br>HAYWARD PROPERTY, LLC, et al.,<br><br>    Defendants, Cross-complainants and Respondents. | A158291, A159299<br><br>(Alameda County Super. Ct. Nos. HG16841187, RG16843893) |

These appeals arise from a dispute over title to one part of a property in the City of Hayward. As of 1979, the entire property was owned by one entity and divided into four parcels. In 1997, the owner reconfigured it into two parcels. In several transactions between 1998 and 2002, one reconfigured parcel was conveyed to XPO Logistics Freight, Inc. (XPO), and the other to Crown Enterprises, Inc., and Hayward Property, LLC (jointly Hayward). This

_____

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part 2 of the Discussion.

1

case concerns which of the two parcels includes a certain part of the original property (the disputed area).

The dispute has two sources. One is the 1997 document reconfiguring the property into two parcels, which has an undisputed error in defining one of the parcels by its metes and bounds. The other is the fact that, sometime before 1997, the county assessor divided the property—for purposes of property taxes—into *three* assessor's parcels with distinct assessor's parcel numbers (APNs). When the property was reconfigured into two parcels, which later passed to different owners, the boundaries of the APNs were not changed. The parties' dispute concerns the significance, if any, of references to those APNs in various title documents. The documents' metes-and-bounds descriptions of parcels support XPO's claim to the disputed area; the APN references arguably support Hayward's claim.

In 2016, XPO sued to quiet title. Hayward cross-complained to quiet title in itself or else obtain restitution of two sums—the property taxes it had paid on the disputed area since 2002 and the purchase price it paid for its parcel.

In 2017, the court granted XPO's motion for judgment on the pleadings on the title claims. The parties continued to litigate Hayward's restitution claims. They ultimately stipulated to an estimated amount of real property taxes Hayward had paid with respect to the disputed area, in excess of the taxes that XPO had paid on a portion of Hayward's property. In 2019, the court entered judgment quieting title to the disputed area in XPO, denying Hayward's purchase-price restitution claim, and awarding relief on its tax restitution claim in the stipulated sum—plus prejudgment interest, over XPO's objection.

Hayward appeals the judgment quieting title, and XPO cross-appeals the award of prejudgment interest on the restitution award, though it does not challenge the restitution award itself (appeal No. A157687). In two consolidated

2

appeals (Nos. A158291 and A159299), XPO also challenges postjudgment orders taxing its costs and declining to award it attorney fees as a sanction for Hayward's discovery abuses and alleged pursuit of a "knowingly false" claim.

In the published portion of this opinion, we conclude that the trial court correctly disregarded APN references in the deeds, and that its judgment must be affirmed insofar as it encompasses a declaration that Hayward did not acquire an interest in the disputed area. In the unpublished portion of this opinion, we address the remaining issues. We conclude that the award of prejudgment interest on Hayward's restitution award, which the trial court evidently considered as mandatory, must be reversed so the court can exercise its discretion in determining whether and from what date to award such interest and, if awarded, apply the correct interest rate. We also affirm the orders taxing XPO's costs and denying sanctions.

**Factual History and Procedural History**

In 1979, the entire property at issue was owned by CF Properties, Inc. and divided into four parcels—original parcels 1, 2, 3, and 4—as shown in recorded parcel map No. 3094 (the 1979 parcel map):

3



Some time before 1997, the Alameda County Assessor divided the property, for purposes of assessing property taxes, into three assessor's parcels, which were enumerated on an unrecorded assessor's map as APN 463-0025-040 (APN 40), APN 463-0025-043-01 (APN 43) and APN 463-0025-044 (APN 44):

4



As can be seen by comparing the maps, APN 40 comprised original parcel 1; APN 43 comprised all of original parcels 3 and 4 and most of original parcel 2; and APN 44 comprised the southeast corner of parcel 2. The following exhibit shows the parties' claims about their parcels:



The parties agree that, after the transactions set out below, Hayward owns at least the polygon to the southwest outlined in blue (the Utah-shaped parcel) and XPO owns at least the unshaded part of the larger polygon to the north and east outlined in green. The highlighted area is the disputed area. It includes all of APN 44 and most of the eastern leg of APN 43.

In brief, events began in 1997 when CF Properties, owner of the entire property, recorded a "lot line adjustment" reconfiguring the four original parcels on the 1979 parcel map into two parcels. Hayward ultimately acquired part or all of reconfigured parcel one, and XPO acquired reconfigured parcel two. The question is which parcel includes the disputed area.

The 1997 lot line adjustment describes reconfigured parcel one—the basis of Hayward's claims—in three ways: (1) as "a portion of [original] parcel [1], a portion of [original] parcel 2, all of [original] parcel 3, and all of [original] parcel 4" as shown on the 1979 parcel map, (2) by metes and bounds, and (3) as "containing 16.42 acres more or less." The legal description of the reconfigured parcels in the 1997 lot line adjustment does not refer to APNs. The metes and bounds are flawed and do not close. They trace a gapped rectangle that does not include the disputed area, but has a gap bordering that area.

In 1998, the parties' chains of title diverged. CF Properties' successor CNF Properties, Inc., issued a deed transferring reconfigured parcel one to Consolidated Freightways Corporation (the 1998 deed). CNF retained reconfigured parcel two, which eventually passed to XPO.

The face page of the 1998 deed conveying reconfigured parcel one to Consolidated Freightways states that the parcel is described in "Attached Exhibit 'A,'" and below that phrase contains a notation: "Assessor's Parcel No. 463-25-43-1 & 44." The text of the attached exhibit A is identical to the text in the 1997 lot line adjustment describing reconfigured parcel one—with

6

the same flawed metes and bounds and the same estimate of "16.42 acres more or less."

In 2000, a "*correction* grant deed" was recorded. Its face page is identical in relevant part to that of the 1998 deed. Exhibit A to the 2000 correction deed modifies exhibit A to the 1998 deed by fixing the metes and bounds so that the parcel closes and by changing the estimate of "16.42 acres more or less" to "7.9 acres more or less." The new description changes the parcel's boundaries to match the Utah-shaped parcel.

In September 2002, Consolidated Freightways declared bankruptcy , and CNF Properties executed a one-page quitclaim deed that transferred reconfigured parcel two to XPO's predecessor Con-Way Transportation Services (Con-Way). The deed purports to transfer the entire original property to Con-Way, but, as XPO acknowledges, CNF Properties could transfer only so much of the property as it had not *already* transferred to Consolidated Freightways in the 1998 deed. Con-Way thus received whatever was *not* conveyed by the 1998 deed.

Hayward acquired its parcel after the bankruptcy court issued an order in November 2002 authorizing a sale of real property. The order approves a sales contract between Consolidated Freightways and Hayward. The contract states that the parcel sold is "legally described in exhibit A attached hereto."

Exhibit A to the sales contract is a legal description in a form designed to be attached to a deed (the 2002 bankruptcy legal description). It defines the parcel sold to Hayward in two ways: (1) as comprising "a portion of parcel 1, a portion of parcel 2, all of parcel 3, and all of parcel 4" from the 1979 parcel map, and (2) by metes and bounds. It includes no acreage estimate. The metes and bounds are identical to those used in exhibit A to the 2000 correction deed defining the parcel conveyed to Consolidated Freightways as the Utah-shaped

7

parcel. At the bottom of the 2002 bankruptcy legal description is a notation reading: "Assessor's Parcel No. 463-0025-043-1 [¶] Assessor's Parcel No. 463-0025-044."

In December 2002, a quitclaim deed from Consolidated Freightways to Hayward was recorded. It transfers "the following described real property in the City of Hayward . . . . [¶] See attached Exhibit A." The attached exhibit, however, describes unrelated land in Emeryville. In 2003, the bankruptcy trustee executed a correctory quitclaim deed with an attached exhibit A identical to the 2002 bankruptcy legal description. The correctory deed has not been recorded, allegedly by inadvertence.[1]

No transaction has occurred since 2003. The question is thus whether the parcel conveyed to Hayward by the 2003 correctory deed is, as Hayward contends, the Utah-shaped parcel plus the disputed area (i.e., all of APNs 43 and 44), or simply the Utah-shaped parcel, as the court found. This history gives rise to at least two subsidiary questions: Was the disputed area part of the parcel conveyed to Consolidated Freightways by the 1998 deed and, if so, was it part of the parcel sold to Hayward by that company's bankruptcy estate in 2002? As will be seen, the record definitively answers only the latter question.

Litigation began in 2015. Hayward petitioned the bankruptcy court to reopen Consolidated Freightways's bankruptcy and amend the description of the parcel in the 2002 bankruptcy legal description to match Hayward's view. The bankruptcy court declined to reopen the bankruptcy, and the federal

---

[1] While the 2003 correctory deed is unrecorded, it nonetheless is necessarily the basis of Hayward's title claims. (See 3 Miller & Starr, Cal. Real Estate (4th ed. 2016) § 10:2 [duly executed and delivered grant deed conveys title even if unrecorded].)

district court affirmed. Neither federal court reached the merits of the title question.

In December 2016, XPO filed its complaint to quiet title and for declaratory relief. Hayward filed a cross-complaint[2] asserting causes of action to quiet title, for slander of title, and for restitution on a theory that XPO was unjustly enriched when Hayward paid the purchase price for its parcel, and when it paid property taxes on the disputed area.

XPO moved for judgment on the pleadings, requesting judicial notice of title-related documents. In October 2017, the court granted its motion as to the title claims. The court, referring to Consolidated Freightways as "CFC," held that "the real property that CNF conveyed to CFC in 1998 (as clarified by the [2000 correction deed]) did not include Parcel 2. Because Parcel 2 had not been conveyed by CNF to CFC, CFC had no power to convey Parcel 2 to [Hayward] in the bankruptcy proceedings."

The court held that the title documents are not ambiguous so as to permit resort to extrinsic evidence: "[Hayward] contends that the [deeds] were ambiguous because they referred to the [APNs] for the property. But [APNs] are created for use by the assessor in assessing property taxes; they are not relevant to issues concerning the alienation of real property." (Citing *Cafferkey v. City and County of San Francisco* (2015) 236 Cal.App.4th 858, 868.) "As part of any final judgment," the court held, it would "order that XPO owns the [disputed area] free and clear of any claims by [Hayward]."

---

[2] In fact, soon after XPO filed its complaint, Hayward—unaware of its filing—initiated a second action by filing its own complaint. The court issued a stipulated order to consolidate the two actions, stay Hayward's, and treat its complaint as a counterclaim in this action.

The parties spent the next 18 months litigating the restitution claims and collateral issues. In May 2019, the court entered a judgment purporting to "quiet title" to the disputed area in XPO as against Hayward.

## Discussion

We review de novo a judgment granted on the pleadings. (*Smiley v. Citibank* (1995) 11 Cal.4th 138, 146.)

### 1. *Title-Related Issues*

a. *Hayward's claim to the disputed area was properly rejected.*

We turn first to whether the 2002 bankruptcy legal description approved by the bankruptcy court and attached to the 2003 correctory deed to Hayward, which in metes and bounds does not include the disputed area, is ambiguous because of the notation referring to the APNs, which would preclude judgment on the pleadings. Revenue and Taxation Code section 327 provides that if, as here, an assessor's map is unrecorded, "land shall not be described in any deed or conveyance by a reference to [that] map." But if, as here, a county imposes a documentary transfer tax, Revenue and Taxation Code section 11911.1 authorizes the county to require, as Alameda County has done, that each deed or conveyance "shall have noted upon it the tax roll parcel number," though such notations "will not be proof of title" and shall be governed, in case of conflict, by "the stated legal description."[3]

---

[3] Alameda County has adopted a transfer tax ordinance (Alameda County Mun. Code, ch. 2.04) that includes, as XPO notes, an APN-notation requirement. (*Id.*, § 2.04.040(A).) The text of that requirement is effectively identical to that set forth in Revenue and Taxation Code section 11911.1. (§ 2.04.040(A) ["Each deed, instrument or writing by which lands, tenements, or other realty [in Alameda County] is sold, granted, assigned, transferred or otherwise conveyed shall have noted upon it the tax roll parcel number. The number shall be used only for administrative and procedural purposes and shall not be proof of title and in the event of any conflicts, the stated legal description noted upon the documents shall govern."].)

Although neither party has cited, and we have not found, a decision applying these sections to the interpretation of a deed, these provisions, read together, plainly require that APN references in a deed recorded in such a county be disregarded unless the face of the deed clearly shows the references to be part of the legal description of the parcel conveyed.[4] The property described in an assessor's map referred to by its APN "need not correspond with actual subdivisions, lots, tracts or other legal divisions or boundaries of land." (*Cafferkey v. City and County of San Francisco, supra,* 236 Cal.App.4th at p. 869.)

This interpretation is consistent with what simple observation of the documents in this case would suggest. In this case, the APN references on which Hayward relies appear on the face pages of the 1998 deed and the 2000 correction deed with no apparent reference to the description of the property being conveyed, which appears in each deed on a separate attachment with no reference to the APN. On the 2002 bankruptcy legal description the notation appears at the bottom of the page, plainly distinct from the legal description of the property. (A full-page image of the bankruptcy legal description is attached to this opinion as Appendix 1.)

A deed is a contract subject to all usual rules of contract interpretation. (*Pear v. City and County of San Francisco* (2021) 67 Cal.App.5th 61, 70.) Under those rules, "the test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether [the instrument] appears to the court to be plain and unambiguous on its face, but whether the offered

_____

[4] We have reviewed the available legislative history of the statutes that adopted or added the relevant language to Revenue and Taxation Code sections 327 (Stats. 1939, ch. 154, p. 1285; Stats. 1951, ch. 1121, § 1, p. 2878) and 11911.1 (Stats. 1971, ch. 102, § 4, p. 131). That history sheds no light on the issue addressed in this appeal.

11

evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." (*Murphy Slough Assn. v. Avila* (1972) 27 Cal.App.3d 649, 653, citing *Pacific Gas & Elec. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37.) In determining whether the property description in the 2002 bankruptcy legal description is reasonably susceptible to the inclusion of acreage beyond the metes and bounds description, Revenue and Taxation Code sections 327 and 11911.1, read together, preclude basing any such interpretation on the mere presence of the APN notations. If a deed is recorded in a county with an APN-notation requirement, and the deed bears APN notations referring to an unrecorded assessor's map, those APN notations may not be treated as part of the deed's legal description of the parcel conveyed unless the face of the deed clearly indicates such an intention.[5] While an APN reference might be considered in resolving an ambiguity that otherwise appears in a deed, the inclusion of the APN reference does not itself create an ambiguity. Otherwise, potentially every deed recorded in a county with an APN-notation requirement would be rendered ambiguous. This is consistent with the California rule of contract interpretation governing the use of parol evidence. (See *Weber v. Dobyns* (1961) 193 Cal.App.2d 402, 406 ["[p]arol evidence is admissible to explain an ambiguity, but not to create one"]; see also *Bionghi v. Metropolitan Water Dist.* (1999) 70 Cal.App.4th 1358, 1366–1370.)

---

[5] In *MTC Financial Inc. v. California Dept. of Tax & Fee Administration* (2019) 41 Cal.App.5th 742, the court found "no reason to disagree that a parcel number could theoretically satisfy the law's requirement for sufficient legal description of a property" (*id.* at p. 749) (although it was there insufficient to do so), but it did not address Revenue and Taxation Code section 327 and said nothing implying that an APN reference not explicitly part of a deed's property description might itself render the deed ambiguous.

Thus, the APN references on the 1998 deed and the 2002 bankruptcy legal description must be construed as APN notations included for tax purposes in compliance with section 11911.1 of the Revenue and Taxation Code, and cannot be read as part of the legal description of the property conveyed.[6] And none of the extrinsic matters to which Hayward refers renders the metes and bounds description in the 2002 bankruptcy legal description reasonably susceptible to the inclusion of the disputed area. The trial court correctly disregarded the APN notations and properly granted judgment on the pleadings insofar as that judgment states that Hayward does not have title to the disputed area as a matter of law.

Hayward contends that section 327 of the Revenue and Taxation Code does not govern the interpretation of the 2002 bankruptcy legal description because the document is not a "deed or conveyance" but an attachment to a bankruptcy court order, which must be construed using ordinary rules of contract interpretation. Hayward cannot have its title and eat it too: It cannot treat the 2002 bankruptcy sale order as if it were a conveyance and yet also argue that section 327 of the Revenue and Taxation Code does not govern interpretation of the 2002 bankruptcy legal description because the document is technically not a deed. The description is incorporated in a deed. The trustee attached a copy of the 2002 bankruptcy legal description as an exhibit to the 2003 correctory deed. As a part of that deed, the 2002 bankruptcy legal

---

[6] Hayward also emphasizes the fact that the 2002 quitclaim deed to XPO's predecessor Con-Way has a handwritten notation "Assessor's Parcel # 463-25-40" immediately adjacent to the legal description "Parcels 1, 2, 3, and 4 [1979 parcel map]." Hayward contends that the handwritten APN reference shows that the grant to Con-Way was limited to APN 40—that is, original parcel 1 only. But for the reasons discussed in text above, the APN reference on the 2002 quitclaim deed to Con-Way must be construed as an APN notation included for tax purposes, not as part of the legal description.

description must be construed in light of section 327, and all other principles of California law governing interpretation of deeds.[7]

  b. *The judgment is properly regarded as providing declaratory relief only.*

  XPO submitted a proposed judgment quieting title against "all persons and entities, including [Hayward], and all persons known and unknown who claim any [interest] in the property, *i.e.*, against the Doe Defendants who were named . . . but were not served by publication." The court declined to enter such a judgment. It noted that "the only defendants who were served with process and/or appeared . . . [,] such that the court had binding, in personam jurisdiction over [them], were Hayward and Crown," and that it never obtained in rem jurisdiction of the property "by publication or any other means of service such that XPO's judgment of quiet title would run to all unknown persons claiming a right title or interest in and to the property." The judgment it entered thus states that "Fee title to the following described real property . . . is quieted in plaintiff XPO Freight: That certain real property . . . legally described as: [metes & bounds]. [¶] The real property described above is the same as [reconfigured] parcel [two] depicted on the plat attached to [the 1997 lot line adjustment] and includes the [disputed area] . . . ; [¶] [Hayward] and

---

  [7] As XPO notes, *Butner v. United States* (1979) 440 U.S. 48 holds that "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." (*Id.* at p. 55.) Hayward replies that *Butner* "affirms exactly the principle that [Hayward] argue[s] here—i.e., that state laws for interpreting contracts (rather than, e.g., any local or state ordinances concerning use of [APNs] in instruments of conveyance) apply to interpretation of . . . bankruptcy court orders." But *Butner* never suggests that only state *common law*, and not state *statutes* like Revenue and Taxation Code section 327, governs the interpretation of a contract approved by a bankruptcy court. All relevant state law, common law or statutory, is applicable.

14

all persons or entities claiming through them . . . , whether known or unknown, shall have no claim or legal or equitable right, title, estate, lien, or interest in the property . . . which is adverse to [XPO]'s title or creates any cloud on [XPO]'s title, or . . . is superior to the rights, titles, estates, and interests of [XPO]."

The trial court correctly declined to enter an in rem judgment quieting title in XPO as against the whole world because XPO failed to effect the publication necessary to obtain in rem jurisdiction. The use of quiet title verbiage in the judgment is problematic, but the purport of the judgment to reject Hayward's claim to the disputed area is correct. "Quiet title" is inapt not only because the service-of-process requirements of Code of Civil Procedure sections 763.010–763.040 were not followed, but because a party seeking a judgment quieting title must prove its own title, and cannot rely solely on the weakness of a defendant's title. (*Reed v. Hayward* (1943) 23 Cal.2d 336, 339–340.) Several ambiguities in the documents by which XPO's predecessor obtained title preclude a judgment quieting title in XPO on the pleadings.[8]

As explained above, the 1998 deed transferring the property to Consolidated Freightways contained the same ambiguities that originated in

---

[8] While we need not decide the point, we note that it is questionable whether the current quiet-title statute (Code Civ. Proc., § 760.010 et seq.) ever permits judgment on the pleadings for a plaintiff. Code of Civil Procedure section 764.010 states, "The court shall examine into and determine the plaintiff's title against the claims of all the defendants. The court shall not enter judgment by default but *shall in all cases require evidence of plaintiff's title and hear such evidence as may be offered respecting the claims of any of the defendants . . . ."* (Italics added.) Since the statute requires the court to consider evidence respecting the claims of a defendant in default (see, e.g., *Harbour Vista, LLC v. HSBC Mortgage Services, Inc.* (2011) 201 Cal.App.4th 1496, 1501–1502), the same would presumably be true if a defendant has answered.

the 1997 lot line adjustment. XPO contends that the 2000 correction deed resolved the ambiguities, but that deed, which stated that reconfigured parcel one contained only 7.9 acres, rather than 16.42 acres, and which replaced the defective metes and bounds with metes and bounds that describe the Utah-shaped parcel, would be valid only if consented to by the grantee. (1 Patton & Palomar on Land Titles (3d ed. 2015) § 83 [If a correction instrument "purports to diminish the original grantee's rights in some ways" it "should not be accepted, unless the original grantee first reconveyed to the grantor or, at least, evidence in the record reveals her consent."]; cf. *Walters v. Mitchell* (1907) 6 Cal.App. 410, 412–413 [a grantor cannot unilaterally correct a deed allegedly misnaming the grantee by simply recording a new deed naming the grantee correctly].) Although the correction deed, in the upper left hand corner, indicates that recording was requested by "Arthur A. Hackworth [¶] Consolidated Freightways," it was unsigned by anyone on behalf of the grantee and does not support judicial notice of the grantee's consent. (See *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 754–755.)

Therefore, the most that the trial court could adjudicate, and what we construe its judgment to adjudicate, is that Hayward has no valid claim to the disputed area. Such a judgment is consistent with the pleadings. The judgment states, "Judgment hereby is entered in favor of XPO . . . on [its] complaint in its entirety." XPO pled causes of action not only to quiet title but also for a declaratory judgment that it "holds fee title to the [disputed area] free and clear of all claims, rights, . . . [and] interests" of Hayward, that certain deeds of trust it made "are senior to and free and clear of all claims, rights, . . . [and] interests" of Hayward, and that Hayward has "no claims, rights, . . . or other interests" in or to the disputed area. While XPO did not establish on the pleadings its right to a judgment quieting title to the disputed

16

area, XPO did establish that Hayward has no interest in that property. Though using the quiet title vernacular, that is all that the judgment correctly determines.

## 2. *Remaining Issues*

Following the entry of the court's order granting judgment on the pleadings with respect to the title issue, there ensued extended proceedings on Hayward's cause of action for restitution. The court found Hayward entitled to restitution of the property taxes it had paid with respect to the disputed area but not to restitution of the amount it had allegedly overpaid to purchase its parcel. The tax-restitution claim was based on the fact that both parties had paid some tax on property found to be part of the other's parcel. The parties ultimately stipulated that the net amount of Hayward's overpayment was $160,000. The court ruled that Hayward was entitled to that sum plus interest on that amount from the dates on which the payments had been made, at the rate of 10 percent per annum, totaling $131,472.97.

The court found XPO to be the prevailing party on its complaint and Hayward on its cross-complaint, and held that each party could recover costs incurred with respect to its pleading. Each party submitted a cost bill and moved to tax the other's costs. Hayward challenged all costs incurred by XPO after October 3, 2017, when the court entered its order granting the motion for judgment on the pleadings. It argued that, since then, "all costs incurred in this litigation [necessarily] related to Hayward's cross-complaint." The court agreed and granted Hayward's motion to tax almost in full, allowing XPO to recover only costs incurred before October 3, 2017, or in seeking entry of judgment. XPO also moved for an award of attorney fees as a sanction for bad-faith litigation conduct (Code Civ. Proc., § 128.5) or discovery abuse (*id.*, §§ 2023.010–2023.030), contending that Hayward had pursued "knowingly false" claims and

17

engaged in discovery abuse by hiding evidence that it knew its claim was unfounded. The court denied the motion, noting that each side had engaged in discovery abuse, and Hayward's did not "affect the eventual outcome of the case," as XPO had prevailed.

On appeal, Hayward challenges the denial of relief on its purchase-price restitution claim, and XPO challenges the award of prejudgment interest on the tax restitution claim, the order taxing its costs, and the order denying sanctions. We address each issue in turn.

a. *The purchase-price "restitution" claim*[9]

Hayward sought restitution of the purchase price for its parcel on the ground that it had been deceived into thinking that its parcel would include the disputed area. The court granted judgment on the pleadings on that claim on limitations grounds. The court reasoned that the 2002 quitclaim deed to XPO's predecessor Con-Way had given Hayward constructive notice that Con-Way (and later XPO) owned the disputed area, which started the statute running. Hayward challenges this ruling, arguing that, like the judgment quieting title in XPO, it rests on the validity of the 2000 correction deed, which we have held cannot be determined on the pleadings. While Hayward is correct in that respect, the claim was nonetheless barred by either the two-year statute of limitations for obligations or liabilities not founded on an instrument (Code Civ. Proc., § 339) or the three-year statute for actions

---

[9] Hayward did not explain how its payment to Consolidated Freightways's bankruptcy estate unjustly enriched XPO, so as to give rise to an equitable duty to make restitution. Because we affirm the denial of relief on limitations grounds, we need not address that question.

sounding in fraud or mistake (Code Civ. Proc., § 338, subd. (d))[10] because Hayward's own deed (i.e., the 2003 correctory deed, which incorporates the 2002 bankruptcy legal description) gave Hayward constructive and actual notice that the parcel it had acquired did not include the disputed area.[11]

b. *Prejudgment interest*

The record suggests that the trial court considered the monetary relief awarded Hayward to be "damages" for breach of contract in an amount certain, subject to mandatory prejudgment interest pursuant to Civil Code section 3287, subdivision (a), at the rate of 10 percent set by Civil Code section 3289 for damage awards for "breach" of a "contract." That is the reason for which the parties disputed whether the amount to which Hayward is entitled became certain when the taxes were paid or when they reached a stipulation as to the amount of overpayment. However, the award is neither "damages" subject to Civil Code section 3287, nor is it for a breach of contract subject to Civil Code section 3289. Hayward recovered not "damages" but restitution. (See *Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 375 (*Espejo*) [because § 3287, subd. (a) "governs recovery of *damages*," it does not apply to monetary relief under a statute authorizing awards of "injunctive relief and

---

[10] XPO pled both statutes in its operative amended answer and raised both in its motion for judgment on the pleadings, which the court granted based on "the applicable statute of limitations."

[11] XPO requests judicial notice of a 2021 federal district court order, now on appeal, granting summary judgment in favor of Hayward's title insurer on Hayward's cause of action for breach of contract based on the insurer's refusal to defend this action or indemnify Hayward for losses due to the defect in its title. The court granted summary judgment on limitations grounds based on other evidence that Hayward learned of the title defect in 2003. While we take judicial notice of the order as a federal court record (Code Civ. Proc., §§ 452, subd. (d), 459), we need not and do not rely on XPO's collateral estoppel argument based on that order to affirm the ruling in the present case.

restitution, but not damages"].) Because the parties had not addressed this issue, we asked them to submit supplemental briefs addressing whether the award could be upheld as an exercise of the court's discretion under Civil Code section 3288—which applies to "an action for the breach of an obligation not arising from contract"—or under the court's equitable discretion to include interest in a restitution award (*Espejo*, *supra*, at p. 375). We also asked if the interest rate should be not 10 percent but 7 percent, the rate set by our state constitution unless a statute provides otherwise (see *Palomar Grading & Paving, Inc. v. Wells Fargo Bank, N.A.* (2014) 230 Cal.App.4th 686, 689–690, citing Cal. Const., art. XV, § 1). Based on the responses received, we conclude that the matter must be remanded for the court to exercise its discretion to determine whether to award prejudgment interest on its tax-restitution award, either under Civil Code section 3288 or its equity power to avoid unjust enrichment (see *Espejo*, *supra*, at p. 375). The date from which interest should run is included within the court's discretion. In all events, any prejudgment interest awarded must be at the constitutional default rate of 7 percent. (Cal. Const., art. XV, § 1).

c. *Order taxing costs*

XPO's opening brief contended that the trial court abused its discretion in ruling on each party's motion to tax—by taxing Hayward's costs too little, and by taxing XPO's costs too much. In its reply, XPO abandons its challenge to rulings on specific costs incurred by Hayward.[12] It now contends only that the

---

[12] XPO's only such challenge involved deposition costs. Its opening brief asserted that, in response to its motion to tax, Hayward's counsel "offered a declaration that '[u]pon information and belief, Hayward does not retain reproducible invoice detail to support' the claimed expenses." Hayward's opposition explains that the trial court struck the deposition costs that Hayward "acknowledged it could not substantiate" and awarded only

20

court abused its discretion in ruling that Hayward was the sole prevailing party on its cross-complaint and could thus recover all costs incurred after the October 2017 order resolving the title claims, while XPO, with one exception, could recover no costs for that period.

There is some basis for XPO's contention. Hayward's cross-complaint sought the recovery of restitution for the payment of excess property taxes and for the alleged overpayment of the purchase price of the property, as well as a decree quieting title and damages for slander of title. Hayward prevailed only as to the tax-restitution claim and not the others. Nonetheless, the determination of the prevailing party is within the broad discretion of the trial court, which we review only for an abuse of discretion. (*City of Santa Maria v. Adam* (2016) 248 Cal.App.4th 504, 516.) We cannot say that the trial court abused its discretion here. It is not uncommon for a claimant to recover only a portion of its claim, yet to be recognized as the prevailing party. (*Friends of Spring Street v. Nevada City* (2019) 33 Cal.App.5th 1092, 1104.) XPO initially resisted Hayward's claim for any restitution. The court did not act arbitrarily or abuse its discretion in treating Hayward as the prevailing party on its cross-complaint.

d. *Denial of sanctions.*

XPO contends the trial court abused its discretion by declining to award it attorney's fees as a sanction, pursuant to Code of Civil Procedure sections 128.5 (bad-faith litigation conduct) or 2023.010 and 2023.030 (discovery abuse) for Hayward having maintained its purchase-price "restitution" claim while allegedly knowing it "was a fabrication dependent upon the knowing falsehood

---

substantiated costs. The record confirms that the court awarded the requested costs "with the exception of . . . costs that are not supported by invoices." XPO's reply abandons the issue.

that Hayward understood it was purchasing the [disputed area]" and for having allegedly withheld evidence that revealed the contemporaneous knowledge making the claim knowingly false. The order addresses completed litigation conduct, so our partial reversal of the judgment does not prevent its review. We find no abuse of the trial court's broad discretion. (*Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 997.)

To substantiate its allegations of a "sham" claim based on a "knowing falsehood," XPO relies on Hayward's belated production of a survey provided to Hayward before the 2002 bankruptcy sale, and the testimony of Hayward's decision-maker Matthew Moroun that "he reviewed the survey before the purchase"—a fact that, in XPO's view, "confirms that Hayward always was aware that it was not purchasing the [disputed area]." As for the objective merit of Hayward's claim, XPO contends that its "maintenance of its APN-based theories—when settled California law rejected them" is the type of frivolous claim subject to sanctions.

We disagree that the governing law was so "settled" that Hayward's claim was legally frivolous. The numerous errors and ambiguities in the chain of title created numerous issues about which there was reasonable disagreement. As for the alleged knowing falsity of the claim's factual predicate, Moroun's review of a survey showing the parcel Hayward purchased to have the boundaries the trial court ultimately accepted does not necessarily prove that Moroun believed, in 2002, that the surveyor was correct. Maroun may well also have been aware of the several ambiguities discussed above, creating reason to question the surveyor's conclusions.

Nor did the court abuse its discretion in declining to award a discovery sanction. Such sanctions "may not place the party seeking discovery in a better position than it would have been in if the desired discovery had been favorable."

22

(*Rail Services of America v. State Comp. Ins. Fund.* (2003) 110 Cal.App.4th 323, 332.) The court reasoned that XPO prevailed on almost all claims, and failed to show how an earlier production of the survey (assuming its production was untimely) would have affected the outcome. XPO cites *Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1162–1164, an extreme case in which the Fourth Appellate District held that a defendant that had withheld vital documents, lied about them, and prevailed at trial, making a new trial necessary, must be sanctioned in an amount sufficient to compensate the plaintiffs for all costs of the first trial. (*Id.* at pp. 1162–1164.) By contrast, XPO not only prevailed as to the title issue, but did so at the earliest possible stage—on the pleadings. The survey in question was not a factor in that ruling. XPO never explains how earlier production of the survey would have enabled it to achieve a speedier, less costly resolution of the title issue than by the motions for judgment on the pleadings by which it did so.

## Disposition[13]

In appeal No. A157687, construing the judgment as a declaratory judgment that Crown Enterprises, Inc., and Hayward Property, LLC have no claims, rights, titles, liens, estates or other interests in, to, or respecting the disputed area, the judgment is affirmed (other than with respect to the award of interest). On XPO's cross-appeal in No. A157687, the award of interest is vacated and the matter remanded for further proceedings in accord with this opinion to redetermine whether to award prejudgment interest and, if so, the amount of such interest. In appeal No. A158291, the orders entered on

---

[13] Hayward has filed motions for judicial notice of 31 documents. As to each document's existence, contents, and recordation or filing, as relevant, but not as to the truth of matters asserted therein, the motions are granted as to items 2–10, 14, 18–27, and 29. The motions are otherwise denied.

August 21, 2019, on each party's motion to tax costs are affirmed. In appeal No. A159299, the order denying sanctions is affirmed.

POLLAK, P. J.

WE CONCUR:

STREETER, J.
BROWN, J.

24

# Appendix 1

# EXHIBIT "A

(City of Hayward)

## Parcel One:

A portion of Parcel 1, a portion of Parcel 2, all of Parcel 3, and all of Parcel 4, as said parcel are shown on the map entitled "Parcel Map No. 3094," etc., filed November 19, 1979, in Book 113 of Maps at Page 62, in the office of County Recorder of Alameda County, described as follows:

Beginning at a point on the Southern line of said Parcel 2, distant along said line South 88° 03' 00" East, 132.00 feet from the intersection thereof with the Western line of said Parcel 2; thence along said Southern line of Parcel 2 and the Southern line of said Parcel 4, the following two (2) courses; 1) North 88°03'00" West, 322.18 feet; 2) Westerly along the arc of a tangent curve, to the left, having a radius of 605.00 feet, through an angle of 15° 04'15", a distance of 159.14 to the intersection thereof with the Western line of said Parcel 4; thence along said Western line of Parcel 4 North 1°49'35" East, 775.97 feet; thence Northerly, Northeasterly, and Easterly along the arc of a tangent curve, to the right, having a radius of 20.00 feet, through an angle of 90°00'00", a distance of 31.42 feet to a point of tangency thereof with the Southern line of Claremont Court (shown on said map as Claremont Avenue); thence along said Southern line of Claremont Court the following three (3) courses; 1) South 88°10'25 East, 213.06 feet; 2) Easterly and Southeasterly along the arc of a tangent curve to the right, having a radius of 20.00 feet, through an angle of 51°19'04", a distance of 17.91 feet to a point of reverse curve; 3) Southeasterly, Easterly, and Northeasterly along the arc of said reverse curve, having a radius of 60.00 feet, through an angle of 111°26'19", a distance of 116.70 feet to the intersection thereof with the Western line of Parcel 1; thence along said Western line of Parcel 1 South 1°49'35" West, 203 feet; thence leaving said Western line of Parcel 1, at right angles, South 88°10'23" West, 132.00 feet; thence parallel with said Western line of Parcel 1 and said Western line of Parcel 2, South 1°49'35" West, 573.30 feet to the point of beginning.

## PARCEL TWO:

An easement to excavate for, install, replace, maintain and use an underground storm sewer line as granted to Consolidated Freightways Corporation of Delaware by Deed recorded April 5, 1968, over that Parcel of land described as follows:

Commencing for reference at a point on the Southern line of that certain strip of land 110.00 feet wide, known as Industrial Parkway West, as described in Deed to City of Hayward, a Municipal Corporation, recorded April 22, 1955, in Book 7637, Official Records, Page 405, at the most Western corner of that certain 0.372 of an acre parcel of land described in Deed to City of Hayward, recorded October 8, 1963, Reed 1011, Official Records, Image 266; thence along the Southern boundary line of said 0.372 acre Parcel South 83° 42' 16" East 51.63 feet; thence South 1° 49' 35" West 1,322.84 feet to a point on the Northern boundary line of the land described in the Deed to Alameda County Flood Control and Water Conservation District, recorded in Book 9524 Official Records, Page 279; thence along the last aforesaid line the following two courses respectively: North 88° 01' 32" West 189.86 feet and thence tangent to the last aforesaid course Westerly and Southwesterly on a 605 foot radius circular arc to the left, through a central angle of 15° 05' 42", a distance of 159.39 feet to the actual point of beginning of this description; thence continuing along last said course Southwesterly along the 605 foot radius circular arc to the left, through a central angle of 19° 10' 11", a distance of 202.42 feet to the Southern line of the land of the Grantor; thence along the last aforesaid line North 88° 01' 32" West 17.46 feet; thence Northeasterly along a 615 foot radius circular arc to the right concentric to the last aforesaid 605 radius arc, through a central angle of 20° 45' 46", a distance of 222.86 feet; thence South 1° 49' 35" West 10.35 feet to the actual point of beginning.

**Assessor's Parcel Number : 463-0025-043-1**
**Assessor's Parcel Number : 463-0025-044**

ALTA Commitment

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judges: | Honorable Ioana Petrou<br>Honorable Evelio Grillo |
| Counsel for Plaintiff, Cross-defendant and Appellant: | STUART KANE LLP<br>Donald J. Hamman<br><br>McALPINE PC<br>Douglas W. Eyre<br>Mark L. McAlpine<br><br>BUCHALTER, APC<br>Glenn P. Zwang<br>Alexandra Grayner |
| Counsel for Defendants, Cross-complainants and Appellants: | GREENBERG TRAURIG, LLP<br>Eric V. Rowen<br>Scott D. Bertzyk |